

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

OCT - 2 2000

Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARL HENRY BLUE, | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-99-0350 |
| | § | |
| GARY L. JOHNSON, Director, | § | **THIS IS A CAPITAL CASE** |
| Texas Department of Criminal Justice, | § | |
| Institutional Division, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

## I.     INTRODUCTION

Before the Court are an application for a writ of habeas corpus, filed by the petitioner, Carl

Henry Blue (hereinafter, "the petitioner"), and a motion for summary judgment, filed by the

respondent, Gary L. Johnson (hereinafter, "the respondent"), Director of the Texas Department of

Criminal Justice, Institutional Division.   The Court has jurisdiction over the subject matter and

parties in accordance with 28 U.S.C. §§ 2254 and 2241 (1996).   Having carefully considered the

application, the motions, the responses, the reply, the record and the applicable law, the Court is of

the opinion that the petitioner's application for federal habeas corpus relief shall be provisionally

GRANTED.  The petitioner's motion to amend his petition is Granted.  The respondent's motion for summary judgment shall be GRANTED in part.

## II.     FACTUAL AND PROCEDURAL HISTORY

The petitioner and his former girlfriend, Carmen Richards-Sanders (hereinafter, "Richards"), were involved in a short and troublesome relationship.  Richards ended the relationship in the summer of 1994, moved into a new apartment in College Station, and began dating Larance Williams (hereinafter, "Williams").   The petitioner soon located Richards and was determined to have vengeance against her.  On August 19, 1994, the petitioner arrived at College Station.  He visited a convenience store and purchased a 40-ounce bottle of malt liquor.  Later, he returned to the store and purchased a small amount of gasoline.

Meanwhile, Richards was at her apartment, preparing to leave for work.  Williams was also present in her apartment.   As Richards opened the door to leave, the door suddenly and unexpectantly open.  Williams then saw Richards back up and say, "Oh my God" as she was backed into a corner.  The petitioner was heard to say, "I told you I'm going to get you."  The petitioner then set Richards and Williams on fire.

Richards died 19 days later from multi-system organ failure as a result of extensive burns.  Although Williams suffered burns, he survived and was released from the hospital on November 12, 1994, about three (3) months after the event.

The petitioner was indicted on October 27, 1994,  for the capital offense of intentional murder while in the course of committing burglary of a habitation.  On April 13, 1995, pursuant to a jury verdict, the petitioner was found guilty of capital murder.  On May 4, 1995, in accordance

2

with Tex. Code Crim. Proc. Ann. article 37.071 § 2 (Vernon 1995), the trial court sentenced the petitioner to death. The petitioner appealed his conviction and sentence to the Texas Court of Criminal Appeals, which affirmed the conviction and sentence on December 4, 1996.[1]

However, on October 18, 1996, pursuant to Article 11.071 of the Texas Code of Criminal Procedure, the petitioner commenced his state application for writ of habeas corpus. An amended application was filed on January 17, 1997. Subsequently, on January 13, 1999, the Texas Court of Criminal Appeals denied habeas relief based on its review of the record and the trial court's findings and conclusions.[2] The petitioner's federal application for writ of habeas corpus was filed on September 15, 1999. The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (1996) (hereinafter, "AEDPA"). On November 12, 1999, the petitioner filed an amended application for relief.

## III.   CONTENTIONS OF THE PARTIES

### A.   *The petitioner's contentions*

Among the myriad of arguments, the petitioner contends that he is innocent of capital murder. He claims that the actual cause of Richards' death was not the burns that he inflicted upon her. Rather, the petitioner avers that Richards' death was due to other factors, including Richards having only one kidney, and the hospital's withholding of life-saving medical procedures. Additionally, the petitioner urges that the evidence failed to establish that he had the "knowing"

---

[1]*Blue v. State,* No. 72, 106 (Tex. Crim. App. Dec. 4, 1996).

[2]*Ex parte Blue,* No. 39, 705-01 (Tex. Crim. App. Jan. 13, 1999).

culpable mental state to commit the murder. The petitioner argues that "reckless" is a much better characterization of the unusual facts of his case.

The petitioner also argues that the trial judge was biased against him and denied him due process of law. According to the petitioner, the judge's mother had been murdered and the judge allegedly attended the assailant's execution. The execution purportedly occurred during the time of the petitioner's trial. Specifically, the petitioner claims that the trial judge's bias was manifested in two aspects. First, the petitioner complains that trial counsel performed so poorly that the trial judge should have disallowed counsel to proceed or, *sua sponte,* conducted a competency hearing to protect the petitioner. Second, the petitioner contends that the trial judge improperly refused to grant his motion for a change of venue.

Furthermore, the petitioner maintains that the sentence imposed violates the eighth amendment to the federal Constitution because the Texas sentencing scheme fails to adequately narrow the class of defendants eligible for the death penalty. According to the petitioner, this is evidenced by the manner in which the definition of burglary was broadened in his case. In this regard, the petitioner claims that he is actually innocent of one of the elements of the aggravating factor of burglary that elevated the offense from ordinary homicide to capital murder.

The petitioner alleges that the prosecution team concealed evidence that would have impeached the credibility of Williams. The petitioner claims that, had this evidence been presented at trial, Williams's testimony regarding the forced entry would have been disbelieved. In his own words, the petitioner maintains that, "[T]he State of Texas has turned a drunken, crack-impaired, impulsive act of passion, done in the midst of a triangular lover's quarrel, into a cold, premeditated capital murder."

4

The petitioner also contends that his due process and eighth amendment rights were violated when the jury selected him to receive the death penalty because the evidence of his future dangerousness was insufficient. The petitioner urges that a review of the evidence adduced in the punishment phase would establish its insufficiency. Specifically, the petitioner avers that: 1) the instructions to the jury failed to properly distinguish between convicted capital murder defendants sentenced to the death penalty and those sentenced to life in prison, in that the jury was told that "any possibility" of future dangerousness was enough to impose death; 2) the trial court improperly informed the jury that a prediction that the petitioner may commit future minor offenses or property crimes was enough to impose death; and 3) the court ordered the sentencing jury to disregard relevant mitigating evidence.

The petitioner next contends that the trial court violated his eighth amendment right when it excluded qualified venire for their reluctance to impose the death penalty. Therefore, according to the petitioner, he was, in effect, unlawfully selected for the death penalty. The petitioner argues that the trial judge erroneously dismissed several qualified prospective jurors for their initial opposition to the death penalty so as to taint the outcome of the entire proceeding.

Additionally, the petitioner avers that his sixth, eighth and fourteenth amendment rights were violated due to the admission of color photographs of the victims at trial. He argues that the photographs were "grisly and gruesome and used only to accent the horror of the injuries." The petitioner argues, therefore, that the photographs should have been excluded.

The petitioner contends that his trial and appellate counsel afforded ineffective assistance, or the equivalent of no assistance, in violation of the sixth amendment. The petitioner claims that he did not raise these claims during the trial due to his mental incompetency. The petitioner avers

that his lawyer's performance was so poor that the trial court should have realized that the petitioner was incompetent when he failed to dismiss and replace counsel. The petitioner maintains that the trial court should have, *sua sponte,* initiated a competency hearing to protect the petitioner's right to due process.

The petitioner contends that the trial court failed to adequately *voir dire* the jury panel concerning the effects of pre-trial publicity and, thereby, denied him due process of law. The petitioner claims that the trial court's *voir dire* of the jury panel was cursory, thus, allowing the media to prejudice the jury.

The petitioner asserts that his right to due process was denied by the accelerated concurrent Texas state habeas procedure. He contends that such procedure does not allow sufficient time for state habeas counsel to discover new and important evidence. Consequently, the petitioner complains that his opportunity to present valid claims with his original state habeas application may be subsequently barred by the Texas and/or AEDPA limitations periods. For instance, the petitioner avers that the medical records of the deceased could have revealed new evidence regarding his innocence.

The petitioner also maintains that the Texas clemency procedure is inadequate in protecting his right to minimal due process at clemency. According to the petitioner, Texas' current clemency process amounts to a meaningless ritual that fails to provide a genuine opportunity for clemency. The petitioner alleges that members of the Texas Board of Pardons and Parole appear to vote in secret, without any substantive or procedural standards to guide their decision-making, and that the current process denies him a hearing, an opportunity for an interview, notice, and information concerning the Board's determination.

6

Lastly, the petitioner alleges that the cumulative errors committed during the trial, appeal, and state habeas proceedings coupled with an inadequate state clemency procedure, have diminished confidence in the state proceedings and, thus, denied him a fair trial. The petitioner contends that nine separate sources of error poisoned the atmosphere of his trial: (1) trial lawyers who did not try, or tried so little that they appeared to be disloyal and functionally "not there;" (2) prosecutors who played with important words, like "probability;" (3) a trial judge who witnessed the execution of his murdered mother's assailant; (4) doctors and a hospital staff who declined to resuscitate the deceased, although she appeared to have had an 80% chance of recovery; (5) testimony by Williams, the "world's most hostile witness;" (6) a victim with only one kidney; (7) a jury panel exposed to one of the most celebrated crimes in Brazos County history; (8) a legislature and judicial system intent on minimizing the protections afforded to the petitioner; and (9) a petitioner who was too ignorant and trusting to be aware of his options.

B.     *The respondent's contentions*

The respondent contends that the petitioner's claims of innocence and judicial bias are conclusory and speculative. Moreover, the respondent argues that the petitioner never brought these claims before the state court. Therefore, the respondent argues that the petitioner's claims are unexhausted and procedurally barred from federal habeas review. The respondent points out that, at this stage, even if the petitioner attempted to raise these claims in state court, they would be dismissed as an abuse of the writ, causing a procedural default for purposes of federal habeas review.

The respondent also contends that the petitioner's appeal to the state court failed to allege a violation of due process rights based on the trial court's failure, *sua sponte,* to initiate a competency hearing. The respondent avers that the claim is, therefore, unexhausted and procedurally

7

barred. The respondent further argues that the petitioner has failed first to establish that counsel was ineffective under *Strickland v. Washington*,[3] which is a necessary showing to succeed on the incompetency claim. In addition, the respondent contends that the circumstances that the petitioner cites are not sufficiently compelling to demonstrate that the trial court should have suspected that the petitioner was incompetent to stand trial.

With regard to the petitioner's claim of an eighth amendment violation and his related claim of actual innocence based on the burglary aggravator, the respondent asserts that these claims are procedurally barred as unexhausted and, nevertheless, without merit. The respondent notes that the petitioner failed to allege that he could qualify under one of the exceptions of the abuse of the writ doctrine. Thus, there is no showing that the factual or legal basis of the claim was previously unavailable; but for a constitutional violation, no rational juror would have found him guilty beyond a reasonable doubt; or, but for the constitutional violation, no rational juror would have answered, favorably one or more of the special issues submitted during the punishment proceeding.

The respondent challenges the petitioner's claim that evidence was withheld that would have impeached Williams' testimony. The respondent argues that the defense counsel was not impeded from emphasizing Williams' possible bias. Moreover, asserts the respondent, the defense counsel conducted a thorough cross-examination of Williams highlighting Williams' potential bias.

The respondent contends that the Court should not review the sufficiency of the evidence presented in the punishment phase because the petitioner is not constitutionally entitled to a review of the punishment phase findings. And, the respondent argues that the petitioner has failed to

---

[3] 466 U.S. 668, 686 (1984).

establish the necessary cause and prejudice in his request for an evidentiary hearing. In the alternative, the respondent avers that the evidence was sufficient for a finding of future dangerousness and that the petitioner's claim, that his eighth amendment rights were violated because the trial court ordered the jury to disregard relevant mitigating evidence, is unexhausted and unmeritorious.

Likewise, the respondent contends that the petitioner's eighth amendment violation claim regarding the exclusion of qualified jury panelists, based on their reluctance to impose the death penalty, is procedurally barred as unexhausted. Moreover, according to the respondent, the allegation is factually unsupported.

The respondent also avers that the petitioner's constitutional claims regarding the admission of the color photographs is without merit and maintains that the state appellate court found that the probative value of the photographs outweighed any prejudicial effect at trial. Likewise, the respondent argues that the petitioner's contentions that trial and appellate counsel were ineffective or of no assistance are, either procedurally unexhausted or without merit.

Next, the respondent contends that the petitioner's claim, that an inadequate voir dire of the jury panel concerning pre-trial publicity, is procedurally barred and without merit.

The respondent asserts that the petitioner has failed to demonstrate that he was denied the right to due process by the accelerated concurrent Texas state habeas procedure. Further, the respondent argues that the petitioner's claim that the Texas clemency procedure is inadequate, is unexhausted, not ripe for adjudication, and without merit. Additionally, the respondent proffers that the claim is foreclosed by Fifth Circuit precedent. Finally, the respondent contends that the

9

petitioner's claim of cumulative error of a constitutional magnitude should be denied on the grounds that each of the petitioner's individual points of error lack merit.

## IV.    DISCUSSION

*A.    Whether the petitioner's claims of innocence and judicial bias are meritorious*

The trial court is the principle venue for ascertaining a defendant's guilt or innocence. *Herrera v. Collins*, 506 U.S. 390, 399 (1993).   Thus, a claim, arising for the first time in federal court, is subject to dismissal for failure to exhaust state court remedies.   *See* 28 U.S.C. § 2254(b)(1)(a).  When considering a federal habeas corpus application, a federal court should not consider errors of fact committed by the trial courts.  *Herrera,* 506 U.S. at 400.   Instead, federal courts should consider only those matters in the application that pertain to ensuring that the individual is not imprisoned in violation of the federal Constitution.  *Id.*

In his claim of innocence, the petitioner maintains that there are other possible causes that contributed to Richards' death.  According to the petitioner, these possibilities is fact undermine the future dangerousness evidence that was required to impose the death penalty.   After a careful inspection of the record, the Court finds that the claim is unmeritorious.  A man who sets out to take the life of another cannot complain when the task is easier than he expected, due to medical infirmities of the victim.  Thus, the fact that Richards had only one kidney which fact placed her in the 20% rather than the 80% chance of survival category cannot inure to the benefit of the petitioner. Moreover, beyond speculation, there is no medical evidence suggesting that the medical staff provided Richards substandard medical care, or "pulled the plug" because she was not wealthy.  The fact that the hospital collected insurance information is nothing more than a routine admission

10

procedure. Therefore, something tangible, beyond a hunch or speculation is required to show that the victim was denied appropriate medical care and that the denial attributed to the death of the victim.

Under the petitioner's claim of judicial bias is the petitioner's contention that he was denied due process when the trial court failed to, *sua sponte,* initiate a competency hearing. To obtain federal habeas relief on a claim of incompetency to proceed with trial, the petitioner must demonstrate that he was incompetent at the time of his trial or that the trial court had a duty to inquire into his competency. *Pate v. Robinson*, 383 U.S. 375, 385 (1966). For such a duty to arise, the evidence before the trial court should reasonably have raised a bona fide doubt as to the petitioner's competency. *Id.* The circumstances relied upon by the petitioner are unpersuasive on this point. While the petitioner displayed limited intelligence and, conceivably, suffered mentally from an extended use of drugs and alcohol, he was competent during the trial. Without evidence then, a bona fide doubt did not arise without some new evidence sufficient to raise the issue now, no hearing is necessary and the claim is unmeritorious.

B.      *Texas Sentencing Scheme*

The petitioner argues that the state of Texas has a constitutional responsibility to tailor and apply the death penalty law in a manner that avoids an arbitrary and capricious application. The Court agrees. However, the petitioner's argument that burglary is not an aggravating circumstance and, therefore, the offense of burglary should not be used to make this a death penalty case is unfounded. He argues that the concept of burglary "was vastly expanded to include any intrusion without the consent of the owner," thereby, reducing the state's burden of proof for an offense that is used to elevate the crime to capital murder.

11

The petitioner claims that, at the time of *Furman v. Georgia*, burglary was generally thought of as a "breaking and entering" and that the concept has since been expanded to include any intrusion without the consent of the owner. See *Furman v. Georgia*, 408 U.S. 238 (1972) (holding that an aggravating circumstance must provide a meaningful basis for distinguishing the few cases in which the death penalty is imposed from the many cases in which it is not). The petitioner argues that, whereas the objective evidence of the time and method of entry was once the crucial element, the critical factor is now often the subjective and fluid mental state of the owner of the habitation or dwelling. The Court disagrees.

The Texas Penal Code § 30.02(a) (3) states that a person commits a burglary if, "without the effective consent of the owner, he enters a habitation, or a building and commits or attempts to commit a felony or theft." Therefore, for a defendant to be found guilty of burglary, a jury must have found that the defendant: 1) intentionally or knowingly; 2) entered a habitation or dwelling; 3) without the owner's consent; and 4) attempted to commit a felony or theft. *Day v. State* 547 S.W.2d 606, 608 (Tex. Crim. App. 1977). Merely, finding that a defendant entered without consent is insufficient to find a defendant guilty of burglary. However, entry through an open door constitutes burglary, when it is committed without effective consent. *Clark v. State* 667 S.W.2d 906, 908 (Tex. App.–Dallas 1984). Intent to commit a felony or theft, an essential element of burglary, must be proven beyond a reasonable doubt. *La Point v. State* 750 S.W.2d 180, 182 (Tex. Crim. App. 1986). Thus, the subjective and fluid mental state of the owner is not an element.

The Court has carefully examined the record and finds that the elements of the burglary offense were proved beyond a reasonable doubt. Moreover, the jury was permitted to objectively consider the particularized circumstances of the murder, the burglary, and the petitioner. And, the

12

efense presented mitigating circumstances at the sentencing hearing. For these reasons, the Court is of the opinion that the selection of the death penalty as punishment for the petitioner was not inherently defective.

### C. The Prosecution's Alleged Concealment of Impeaching Evidence

The petitioner alleges that the prosecution was aware that Williams' testimony lacked credibility. The petitioner bases this assertion on several grounds, including Williams' release from probation and Williams' admission during the trial that he had lied to police authorities about his use of crack cocaine.

Although the petitioner seeks to offer new evidence of Williams' criminal record, § 2254(e)(2) specifically prohibits a hearing on this allegation. A petitioner is entitled to an evidentiary hearing only if he can demonstrate by clear and convincing evidence a cause for his failure to develop the facts in a state court proceedings and actual prejudice resulting from that failure. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11 (1992). The record appears to demonstrate that Williams had a lengthy criminal record and that this information was available to the defense. Therefore, the circumstances surrounding Williams's probation, or the fact that he received an early release, would not prevent Williams's impeachment on other matters.

### D. Petitioner's Allegations of Insufficient Evidence of Future Dangerousness

Next, the petitioner asserts that there was insufficient evidence of future dangerousness and, therefore, his eighth amendment rights were violated.[4] The eighth amendment does not require a

---

[4]Concerning the issue of future dangerousness, the petitioner's argument that the *Smith v. State*, 779 S.W.2d 417 (TEX. CRIM. APP. 1989) precedent was not applied in this case by the Court of Criminal Appeals and, therefore, the petitioner's Eighth Amendment right to be free from an arbitrary selective application of the death penalty is without merit. Unlike the facts in *Smith*, the facts in the case at bar show that the petitioner had a history of assaultive conduct, had a predisposition or premeditation to kill, and extended his predisposition beyond the intended victim to her male

state appellate court to compare the sentence in the case before it with the penalties imposed in other capital cases. *Pulley v. Harris* 465 U.S. 37, 44 (1984). However, because the petitioner is disputing the sufficiency of evidence, the federal standard is designated in § 2254.

In ruling on a federal writ, a federal court will overturn a factual conclusion of a state court, only when the conclusion reached is not "fairly supported by the record." *Parker v. Dugger*, 498 U.S. 308, 320 (1991). To determine the sufficiency of the evidence, the court reviews the evidence adduced at trial in a light most favorable to the verdict. The court ascertains whether any rational trier of fact could have found, beyond a reasonable doubt, that the petitioner would probably commit criminal acts of violence in the future, thus, constituting a continuing threat to society. *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000). The facts of the crime alone may be sufficient to support a finding of future dangerousness. *Allridge v. State*, 850 S.W.2d 471, 488 (Tex. Crim. App. 1991).

In determining future dangerousness a jury may consider but is not limited to: 1) the circumstances of the capital offense, the defendant's state of mind, and whether he acted alone or with other parties; 2) the calculated nature of the defendant's acts; 3) the forethought and deliberateness exhibited during the crime; 4) the defendant's prior criminal record, and the severity of the prior crimes; 5) the defendant's age and personal circumstances at the time of the offense; 6) whether the defendant acted under duress or the domination of another at the time of the offense; 7) psychiatric evidence; and 8) character evidence. *Barnes v. State*, 876 S.W.2d 316, 322 (Tex. Crim. App. 1994).

---

friend.

The record reflects that the petitioner was 29 years old and acted alone. There is no indication that he acted under duress or the domination of another person. Evidence shows that on the day before the murder, the petitioner threatened to burn down the apartment and whomever was inside. Although no evidence of prior convictions was presented, witnesses testified as to the petitioner's history of violence. Among the witnesses was the petitioner's ex-wife, who testified that when she was eight months pregnant, the petitioner beat her, put a gun to her head, and threatened to kill her. An ex-girlfriend also testified that the petitioner beat her with his fists, kicked her, sexually assaulted her, and broke into her house. A witness who considered himself the petitioner's personal friend testified that he saw the petitioner outside the petitioner's home, waving a gun and repeatedly saying, "I'm gonna kill that bitch." Officer Barnett testified that the petitioner violently struggled and attempted to kick him when he attempted to arrest him. Other officers testified that, when they responded to a complaint of domestic violence, involving the petitioner, the petitioner ran to evade arrest. Thus, the facts here suggest something more than a desire to commit an assault. The petitioner actually planned the death of his victim.

The petitioner presented witnesses on his own behalf, including two experts, a chemical dependency counselor, a priest and a prison guard. The petitioner's own witness, psychologist Walter Quijano admitted during cross-examination that the petitioner constituted a continuing threat to society. In his cross-examination of Quijano, the district attorney elicited the following testimony:

> Q.    And do we have a series of factors then that help us in predictions of future dangerousness?
>
> A.    There are three groups of factors that I consider when asked about dangerousness, and this is derived from literature as

15

well as from my own personal work.  The first cluster is what
is called a statistical factor.

Q.  Statistical?
A.  Yes.

Q.  And what statistical factors are important?

. . .

Q.  – violence.  Okay.  Okay. is—what else under statistics do we
look at?
A.  Gender or sex, male being more violent than female.
Q.  Okay.
A.  Race, statistically.

Q.  Okay.  This is just taking a hard look at the numbers in the
past, is that correct?
A.  These are, yeah, the race is just looking at the number–the
racial breakdown in the prison system.

Q.  Okay.
A.  And in that, the minorities are over represented.

Q.  Okay.
A.  Now, race is then neutralized by the next factor, which is
education.

. . .

Q.  Now, let's go back through this chart, and if you could, tell
the jury which of these factors can be controlled by the prison
environment?

. . .

A.  You cannot change gender.
Q.  Nor sex?
A.  Nor sex.

Q.  I'm sorry, nor race.
A.  Race.  Education, you can increase by participating in the
Wingham School System.

"[T]he Equal Protection Clause prohibits the state from using race in its decision-making,

unless it can meet the most exacting scrutiny . . . justified by a compelling government interest.

16

*United States v. Webster*, 162 F.3d 308, 355 (5ᵗʰ Cir. 1998) (*citations and quotations omitted*). *Id.* In the realm of capital sentencing, this standard never can be met, because race is a totally irrelevant factor." "Discrimination on the basis of race, odious in all respects, is especially pernicious in the administration of justice." *Rose v. Mitchell*, 443 U.S. 545, 555 (1979). The guillotine, like the Constitution, is color blind. *Webster*, 162 F.3d at 356.

Quijano's testimony, during the punishment phase, where he declares that race is a predictor of future dangerousness, was clearly unconstitutional. Neither the trial court nor the prosecutor sought to correct this wrong. In fact, the prosecutor elicited the data and then erected a case for future dangerousness on the race factor. The Attorney General, respondent's counsel herein, has confessed error in this point. Therefore, nothing more needs to be said on this point or regarding other claims made by the petitioner that pertain to the sentencing phase of the trial.

    E.    *Exclusion of Qualified Jury Panelists Because of Their Reluctance to Impose the Death Penalty*

Because the petitioner failed to offer proof as to which qualified jury panelists were allegedly improperly dismissed, the Court finds that no reviewable issue exists. The petitioner's conclusory allegations are insufficient and fail to rise to the level of stating a claim.[5]

    F.    *Admission of Photographs*

When a photograph is competent, material and relevant to an issue at trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury. *Long v. State*, 823 S.W.2d 259, 271-72 n.18 (Tex. Crim. App. 1991), *cert. denied*, 505 U.S. 1224 (1992).

---

[5]Furthermore, the record indicates that two jurors were excluded for cause because they *firmly* opposed the death penalty, without reluctance or ambiguity: Candida Rita Portales, and Billy Henry Magee. The petitioner's failure to object to the exclusion of the jury panelists, either at trial and/or on appeal to the state court, results in a procedural default.

If a verbal description of the body and the scene of the crime is admissible, then a photograph depicting the scene is also admissible. *Id.* Admissibility is governed by FRE rule 403 which favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990). The Court may consider several factors in determining whether the probative value of a photograph is substantially outweighed by the danger of unfair prejudice. *Long,* 823 S.W.2d at 271-72 n.18. The decision of admissibility is one grounded in the trial court's discretion. *Allridge v. State, 850 S.W.*2d 471, 494 (Tex. Crim. App. 1991).

The Supreme Court has made clear that it is not the province of a federal court on habeas review to reexamine state court determinations on state law questions, including the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The Court concludes that the petitioner has failed to establish that the photographs were irrelevant and that such admission was fundamentally unfair. Hence, the Court is of the opinion that the petitioner's sixth, eighth and fourteenth amendment rights have not been violated with respect to the admission of the photographs.

G.      *Ineffective Assistance of Counsel*

"In all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defen[s]e." U.S. CONST. Amend. VI. Embodied in this right to counsel is the right to effective counsel. *Strickland v. Washington,* 466 U.S. 668, 686 (1984). It is well-settled that a defendant is also constitutionally entitled to effective assistance of counsel on appeal where the appeal is a matter of right under state law. *Evitts v. Lucey,* 469 U.S. 387, 394-95 (1985).

The benchmark for adjudicating a claim of ineffectiveness of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the proceeding cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686. The petitioner has the burden to prove a claim of ineffectiveness of counsel by a preponderance of the evidence. *Jernigan v. Collings*, 980 F.2d 292, 296 (5th Cir. 1992). To determine whether a petitioner's claim that counsel's assistance was so defective as to require reversal of a conviction, the Court employs a two-prong approach. *Strickland*, 466 U.S. at 687.

First, the petitioner must demonstrate that counsel's performance was deficient. *Id.* 687. The appropriate measure for judging attorney performance is that of reasonable effective assistance, considering the totality of the circumstances. *Id.* at 687-88. The petitioner must establish that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 688. Judicial analysis of counsel's performance must be exceedingly deferential. *Id.* at 689. A fair evaluation of attorney performance demands that every attempt be made to dissipate the distorting effects of hindsight. *Id.* In reconstructing the details of the challenged conduct, the Court must assess counsel's viewpoint at the time. *Id.* The strong presumption is that the conduct of counsel falls within the wide spectrum of reasonable professional assistance. *Id.*

Second, the petitioner must show that the ineffective assistance of counsel so prejudiced the petitioner that the petitioner was not afforded a fair trial. *Id.* at 687. To demonstrate prejudice, the petitioner must establish that, but for the unprofessional errors of counsel, there is a reasonable probability that the result of the adjudication would have been different. *Id.* at 694. The courts have held "reasonable probability" to be a probability sufficient to undermine confidence in the outcome.

*Id.* Further, appellate counsel is not obligated to advance every issue on appeal, especially when counsel determines that some arguments are meritless. *Jones v. Barnes*, 463 U.S. 745, 749 (1983).

The petitioner avers that his trial and appellate counsel rendered ineffective assistance on many occasions. The Court has considered each of the petitioner's allegations and found that, trial counsel's performance was consistent with the facts and momentum of the trial. Moreover, the petitioner failed to demonstrate that, but for counsel's unprofessional errors, a reasonable probability exists that the adjudication would have been different. Because the petitioner failed to meet his burden, the Court finds that the petitioner's claim that his trial and appellate counsel rendered ineffective assistance is without merit.

H.       *Voir Dire and Pre-Trial Publicity*

The Court has conducted a thorough review of the record and finds that, in the state court proceedings, the petitioner neglected to raise the issue of inadequate voir dire. The petitioner's failure to raise this issue in the state writ results in a procedural default. Moreover, the petitioner neglected to argue that his claim qualifies under any exception, and the Court does not suggest that one exists. Because the petitioner's claim is procedurally barred and no exception is argued, the Court will decline to consider the merits.

I.       *Accelerated Concurrent State Habeas Procedure*

In 1995, the 74th Texas legislature implemented a special habeas corpus law for capital punishment cases. Tex. Code Crim. Proc. Ann. art. 11.071 (1995). The statute provides that the habeas corpus process will run concurrently with the ordinary appellate process. A death row inmate must apply for habeas corpus relief not later than 180 days after the day the convicting court appoints habeas counsel. Tex. Code Crim. Proc. Ann. art. 11.071 § 4(a) (Vernon Supp. 2000). In the

20

alternative, the petitioner must apply not later than 45 days after the date that the state's original brief is filed on direct appeal with the Court of Criminal Appeals. *Id.* With few exceptions, death-row inmates are entitled to one state writ of habeas corpus proceeding. *Id.* § 5(a)(1)-(3).

A second habeas petition is considered an abuse of the writ if the petitioner brings forth claims that could have been, but were not, raised in the first petition. *See Russell v. Collins*, 944 F.2d 202, 205 (5th Cir. 1991) (per curiam). An abuse of the writ finding by the state court qualifies as a procedural bar in a federal habeas review, *Murch v. Mottram*, 409 U.S. 41, 45-46 (1972) (per curiam), even though an application for a federal writ of habeas corpus relief is governed by § 2244(d)(1)(A).[6] *See* § 2254(b)(1)(a) (1996). Thus, in some instances, as here, the state's concurrent habeas process offends "due process" and "equal protection." Here, the process pitted state habeas counsel against state appellate counsel, both with the same client. It is apparent that a conflict of interest is created by this "rule of concurrency" that militates against good lawyering. Surely, a defendant on death row should not be required to choose between the two. Nor should an attorney suffer the abuse of an attorney attempting to represent his own client. The state should not have it both ways — creating the conflict in the state process and then taking advantage of it in the federal process.

### J.     *Petitioner's Allegations of Inadequate Clemency Procedure*

The petitioner avers that the Texas clemency procedure is inadequate and, therefore, denied him of minimal due process. The respondent argues that this claim is foreclosed by Fifth Circuit precedent. The Court agrees. Absent extreme circumstances, such as where a state official "flipped

---

[6]28 U.S.C. § 2244(d)(1)(A) provides that a one-year limitations period begins to run when the judgment becomes final after direct appeal or the time for seeking such review has expired.

a coin" to determine whether to grant clemency, or where the state arbitrarily denied a prisoner access to its clemency procedures, the clemency procedure does not violate due process principles. *Faulder v. Texas Board of Pardons and Paroles*, 178 F.3d 343, 344 (5th Cir. 1999), *cert. denied*, 527 U.S. (1999). After a review of the record, the Court is of the opinion that the petitioner's claims do not fall within the realm of extreme circumstances resulting in a denial of due process.

### K. Cumulative Effect of Petitioner's Trial, Appeal, State Habeas and Clemency

Federal habeas relief may be granted only for cumulative errors in the conduct of a state trial where (1) the individual errors involve matters of constitutional dimension, rather than mere violations of state law; (2) the errors are not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). After careful consideration of the record, the Court concludes that the petitioner's points of error lack merit. Likewise, the petitioner's claim of cumulative error is unmeritorious because any error is not of a constitutional magnitude.

## V. CONCLUSION

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The Court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party, the respondent in this instance, bears the burden of informing the Court of the basis for its motion for summary judgment and identifying pleadings and

22

any other record evidence that demonstrates the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323.

Once the movant meets its burden, the non-movant must "go beyond the pleadings" and designate "specific facts" in the record "showing that there is a genuine issue for trial." *Id.* at 324. An issue is "genuine" if the evidence is sufficient for a reasonable trier of fact to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists. *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).

The primary inquiry here is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson,* 477 U.S. at 251-52. The substantive law of the case identifies which facts are material. *Id.* at 248. Only disputed facts that potentially affect the outcome of the suit under the substantive law preclude the entry of summary judgment. *Id.*

In light of the foregoing discussion and analysis, it is the judgment of the Court that the petitioner's application for federal habeas corpus relief shall be provisionally GRANTED only as to the punishment phase of his trial. However, the respondent's motion for summary judgment shall be GRANTED otherwise.

23

It is so ORDERED.

Signed this 29th day of September, 2000.

KENNETH M. HOYT
United States District Judge

24

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

OCT 0 2 2000

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| Charles Steward, et al. | § | |
|     Plaintiff(s), | § | |
| | § | |
| VS. | § | 75-H-1781 |
| D & D Plumbing Co., et al. | § | |
|     Defendant(s). | § | |

### ORDER FOR DISBURSEMENT OF MINOR'S FUND

Before the Court is an application to withdraw funds held in the Court's Registry. The funds were originally deposited into the Registry because Juwana Armstead was a minor child. The minor has now provided satisfactory evidence that she has reached the age of majority and is now entitled to the funds.

It is, therefore, **ORDERED, ADJUDGED AND DECREED** that the Clerk disburse and deliver to Juwana Armstead-Todd , social security number 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 , the principal $1,171.23, plus accrued interest, held in the Court's Registry for her account, pursuant to the Final Judgment and any other Court Order entered in this case. The proceeds shall be sent to the following address:

13630 Foothill Blvd.
Sylmar, CA 91342

DONE at , Texas this the _2nd_ day of _October_ ~~September~~, 2000.

UNITED STATES DISTRICT JUDGE

22

United States Courts
Southern District of Texas
ENTERED

OCT 0 2 2000

Michael N. Milby, Clerk of Court

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

### HOUSTON DIVISION

| | | |
|---|---|---|
| Charles Steward, et al. | § | |
|     Plaintiff(s), | § | |
| | § | |
| VS. | § | 75-H-1781 |
| D & D Plumbing co., et al. | § | |
|     Defendant(s). | § | |

### ORDER FOR DISBURSEMENT OF MINOR'S FUND

Before the Court is an application to withdraw funds held in the Court's Registry. The funds were originally deposited into the Registry because Jeffrey Armstead was a minor child. The minor has now provided satisfactory evidence that he has reached the age of majority and is now entitled to the funds.

It is, therefore, **ORDERED, ADJUDGED AND DECREED** that the Clerk disburse and deliver to Jeffrey Armstead , social security number 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 , the principal $585.61, plus accrued interest, held in the Court's Registry for his account, pursuant to the Final Judgment and any other Court Order entered in this case. The proceeds shall be sent to the following address:

    13630 Foothill Blvd.
    Sylmar, CA 91342

DONE at , Texas this the _2nd_ day of ~~September~~ _October_, 2000.

_____
UNITED STATES DISTRICT JUDGE

23